NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 11a0081n.06
No. 09-1853
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Feb 07, 2011**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| MICHAEL CARSON, | ) | |
| | ) | |
| Plaintiff – Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE  EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant – Appellee. | ) | |

Before:  NORRIS, ROGERS, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.**  Michael Carson appeals from the grant of summary judgment in favor of Ford Motor Company on his claims of discrimination under Titles I and V of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 1210, and retaliation under the ADA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5.  We affirm.

**I**

Carson suffered from ulcerative colitis, which necessitated removal of his colon.  As a result, he presently requires accommodations including unimpeded access to a restroom and a close parking-permit.  Carson began working at Ford's Rouge Steel Division in 1973.  He remained with Rouge when it became Severstal in 1989.  Under a collective bargaining agreement, Carson and other former Rouge employees at Severstal retained a "Return to Ford" option.  In 2004, Carson exercised this option.  Carson was initially placed in a "gen pool" of former Severstal employees and

received full-time wages while Ford attempted to place him in a new position. Ford's initial attempts to place Carson were unsuccessful, as he was sent to positions that did not accommodate his medical restrictions. In late 2004, Carson filed a complaint with the EEOC alleging disability discrimination due to Ford's failure to place him in a position that he could perform. While the complaint was being investigated, Ford assigned Carson to its Stamping Plant. However, this position too did not meet his restrictions. Carson was then laid off, but continued to receive "sub-pay" equaling 80% of his regular pay and unemployment compensation benefits.

On August 8, 2005, Carson was assigned to a position as a cleaner in the Rouge Office Building. Carson signed an acknowledgment that he could perform the job. On August 31, the EEOC issued a "Determination" finding reasonable cause to believe that Ford had discriminated against Carson in violation of the ADA. Carson began working as a cleaner in September 2005, and the EEOC closed its file on the case in January 2006.

On February 21, 2007, around 8:15 a.m., Carson was cleaning the office of Colleen Moynihan, Powertrain Quality Director, on the third floor of the Rouge Building. Brenda Mende, an administrative assistant to Moynihan, arrived at work and heard what she believed to be drawers being rapidly opened and closed in Moynihan's office. She entered the office and had a brief conversation with Carson about his presence there. When Moynihan arrived, Mende described the incident to her. On Moynihan's suggestion, Mende reported the incident to the Rouge Site Manager, and gave a statement to building security around 10:30 a.m.

An investigation commenced, headed by Donnie Williams and supervised by Robert Michalowicz. Michalowicz, a labor relations specialist, had previously been involved in Ford's

2

response to Carson's 2004 EEOC complaint. Williams called Mende and asked her to send him an email, which she did. Mende's email stated that when she arrived at work, Moynihan's office was "unlocked, unli[t] and I heard drawers being opened and closed very quickly. I entered her office to investigate and found [Carson] opening and closing the drawers in her office." Mende reported that Carson's explanation for his actions was that he thought the office was unoccupied and he had brought a bin for shredding. Mende noted that Carson did not leave a shredding bin, stating that the one he brought was "not the correct one," and that he asked her what other offices were vacant. A separate incident report based on Mende's statement to building security stated that Carson was found "rambling" through Moynihan's desk. Williams did not personally question Mende about the incident.

Williams attempted to locate Carson, but was unable to immediately find him. Carson later received a phone call from his supervisor asking him to attend a meeting with Williams. Carson claims that when he arrived at the meeting, Williams informed him that the decision to terminate him had already been made but that it remained necessary to take a statement.[1] Carson gave a statement

---

[1]The parties dispute whether Williams stated that Carson was already terminated prior to giving a statement. Carson attributes the statement to Williams in an affidavit he submitted to the district court. The district court refused to consider the affidavit because the court found that the affidavit conflicted with Carson's deposition testimony in which he discussed the meeting with Williams but did not mention Williams' supposed statement. On summary judgment, the district court should not refuse to consider a statement contained in an affidavit that is not directly contradicted by prior deposition testimony. *See Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006). The record in the instant case demonstrates no direct contradiction. However, there is no dispute that the decision to terminate Carson could have been rescinded following his interview with Williams, or at any point during a subsequent multi-stage grievance process. Nor is there any dispute that Carson was not officially terminated until 1:46 p.m., after his meeting with Williams and a subsequent meeting between Williams and Michalowicz. Thus, this is of limited importance.

3

confirming that he had encountered Mende in Moynihan's office but denying any wrongdoing and claiming that he only closed one drawer that had been left open and was in his way. Carson was then accompanied by security to his car and his locker, which were searched. No stolen articles were found. After a subsequent meeting with Williams at which Carson signed a document recounting his version of the incident, Carson was officially discharged. Carson acknowledges that his disability was not mentioned at any point during the process.

On February 28, 2007, Carson filed a complaint with the EEOC, alleging that he was fired in retaliation for his filing of the 2004 complaint. The EEOC issued a right to sue letter and Carson commenced the instant action in state court. The case was removed to the U.S. District Court for the Eastern District of Michigan on September 20, 2007. On December 1, 2008, Ford moved for summary judgment. The district court granted Ford's motion. Carson timely appealed, asserting that the court erred in granting summary judgment on his retaliation claim under the ADA.

## II

We review de novo the district court's grant of summary judgment. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). Summary judgment is appropriate if, based on "materials in the record," Fed. R. Civ. P. 56(c)(1)(A), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "This court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party, but uphold the grant of summary judgment '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Howard ex rel. Estate of Howard v. Bayers*, 457 F.3d 568, 571 (6th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

4

U.S. 574, 587 (1986)) (alteration in original). Reviewing a motion for summary judgment "necessarily implicates the substantive evidentiary standard of proof that would apply at . . . trial . . . . The mere existence of a scintilla of evidence in support of the [opponent's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opponent]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The ADA prohibits a qualified employer from discriminating against an individual on the basis of disability. Under the act's anti-retaliation provision, an employer may not "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge . . . under [the ADA]." 42 U.S.C. § 12203(a). We analyze ADA retaliation claims using the same general framework as other statutory retaliation claims. *See, e.g.*, *Thaddeus-X v. Blatter*, 175 F.3d 378, 387 (6th Cir. 1999) (en banc) (noting that the "essential framework" of retaliation claims under the ADA, Title VII, NLRA and other statutes remains the same). Where there is only circumstantial evidence of retaliation, the familiar *McDonnell Douglas/Burdine* burden-shifting framework is applied. *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 491 (6th Cir. 2010). As we recently explained,

> To make a prima facie showing of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action. Once this showing is made . . . the defendant must articulate a legitimate nonretaliatory reason for its action before the burden shifts back to plaintiff to show that the proffered reason was not its true reason but merely a pretext for retaliation. The burden of persuasion remains with the plaintiff throughout.

*Harris v. Metro. Gov't of Nashville & Davidson Cnty.,* 594 F.3d 476, 485 (6th Cir. 2010) (internal citations omitted). To demonstrate that an employer's proffered reason is pretextual, a plaintiff must

5

"produce evidence that either the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009) (citation omitted).

Because Carson has failed to introduce evidence that Ford's decision was "merely a pretext," we need not consider whether he has stated a prima facie case. Ford's proffered reason for terminating Carson was his "improper conduct" of rooting through Moynihan's desk. At the time of the initial decision to terminate Carson, accepting his assertion that the decision was made prior to his interview, it is undisputed that Ford had received an allegation against Carson by Mende stating that she had "found [Carson] opening and closing the drawers in [Moynihan's] office." Mende's statement further noted that Carson told her he had brought a large bin with him for shredding, even though it had not been requested, but left with the bin stating that it "was not the correct one," and that he believed the office was vacant. After Mende's complaint was received, Ford attempted to locate Carson. Carson could not be found for over an hour, and when reached on his cell phone, initially told his supervisor that he left for an early lunch.[2] Michalowicz testified that between Mende's credible allegation and Carson's subsequent disappearance, he concluded that Carson had been caught by Mende in the process of searching for items to steal, or possibly stole items and removed them from the premises.[3]

---

[2]In his deposition Carson claims that this was said in jest and that he had actually been cleaning a part of the building that did not have cell phone reception. However, he does not dispute that Ford could not locate him during the relevant time period.

[3]Michalowicz also noted that the decision to terminate Carson was influenced by Moynihan's "level of importance within the company and because of what those drawers could contain."

Carson does not explicitly state upon which means of demonstrating pretext he relies. We have held that the first means, absence of factual basis, requires "evidence that the proffered bases . . . never happened." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343 (2009), *as recognized by Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009). While Carson disputes going through Moynihan's desk, there is no dispute that Mende's complaint was made in good faith. Carson argues that Mende's perception was mistaken, not that the underlying incident never took place. Nor does he dispute that going through Moynihan's desk would be cause for termination, which corresponds to the third showing. Carson's argument appears to be addressed to the second showing, where a plaintiff

> attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Id.*

Carson argues that a trier of fact could find that Ford's proffered reason was pretext from the asserted inadequacies of Ford's investigation. He notes that Mende gave an e-mail statement, but was not interviewed; that he was never fully able to tell his side of the story; that Michalowicz demonstrated a "blind reliance" on Mende's statements; and that the entire process represented a "rush to judgment." He contends that a rational trier of fact could conclude that the investigation was "a sham," and that Michalowicz had purposefully rushed the investigation in order to fire Carson before exonerating facts were uncovered.

7

However, Carson has failed to introduce any evidence—other than his own conclusory allegations—that the investigation leading to his termination was insufficient or a departure from Ford's normal practice. At oral argument, his counsel conceded that the record before the district court contained no evidence regarding Ford's policies for conducting such investigations.[4] Michalowicz testified in his deposition that Carson's union preferred disciplinary decisions to be made quickly—in no more than three days—and that, in his opinion, the investigation of Carson was reasonable under the circumstances.

We are mindful that Carson bore the burden of persuasion on this point. This burden is not satisfied by introducing "metaphysical doubt" as to the intent of the decision-maker[5] or the adequacy of the process. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Carson was required to bring forward evidence tending to show that retaliatory animus was the but-for cause of his termination. His subjective belief that Ford's proffered reason is false, and that retaliation was the actual motive, is not sufficient to withstand summary judgment. *See, e.g.*, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 585 (6th Cir. 1992) ("[C]onclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

---

[4]Carson's affidavit briefly states that his termination contravened the union's collective-bargaining agreement (CBA), but the CBA itself was not introduced.

[5]Carson's evidence that Michalowicz held a grudge against him for an EEOC complaint filed in 2004 consists of one e-mail in which Michalowicz congratulated a subordinate after Carson's complaint was closed upon Ford's assigning him a position within his capabilities, and Carson's own allegations that Michalowicz "was a thirty year veteran of labor relations and knew how to play the game."

We **AFFIRM** the judgment of the district court.