**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0459n.06

Case No. 16-6613

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

**FILED**

Aug 07, 2017

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TREY MANSFIELD, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| CITY OF MURFREESBORO, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |

**O P I N I O N**

Before: BOGGS, MOORE, and McKEAGUE, Circuit Judges.

**BOGGS, Circuit Judge.** Trey Mansfield, a police officer and K-9 handler for the Murfreesboro Police Department, sued the City of Murfreesboro for retaliation under the Fair Labor Standards Act (FLSA) and Title VII of the Civil Rights Act of 1964. His claim: when a new Sergeant position was announced for the K-9 unit and another officer was selected for the post, Mansfield was denied the promotion as retaliation for his previous involvement in proposed litigation to collect unpaid wages for mealtime breaks, for his criticism of changes to shift scheduling, and for his support of another officer who had alleged sex discrimination by Major David Hudgens. More generally, Mansfield alleges that Major Hudgens was a "monster" who would, in the presence of other officers, say things like, "I think I'll fuck with Trey Mansfield today," or—in response to Mansfield's assertion that the new schedule would make childcare difficult—"I guess your precious little princess will have to fucking deal with it."

The district court granted summary judgment for the City, holding that Mansfield had neither direct evidence of retaliation nor circumstantial evidence that would support an inference of retaliation under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). The officer chosen for the new Sergeant position was the highest-scoring applicant according to a numeric ranking system employed as part of the City's evaluation guidelines, and the officer chosen was already a Sergeant in another unit. Mansfield, on the other hand, was the fourth-ranked applicant out of eight. And Major Hudgens had recused himself from the promotion board responsible for selecting the new Sergeant. Thus, while Mansfield may well have deep-seated and genuine disputes with Major Hudgens, Mansfield cannot show a genuine dispute of material fact to overcome the City's motion for summary judgment.

We therefore affirm the judgment of the district court.

# I

As a threshold matter, we consider whether we have jurisdiction. Mansfield's cause of action was consolidated with that of another officer, Gregg Brown, and pretrial litigation in Brown's case remains ongoing, raising the question whether the summary-judgment order in Mansfield's case is a "final" decision from which Mansfield may now appeal. *See* 28 U.S.C. § 1291. We have held that when a court consolidates two cases on its own, unlike when plaintiffs amend their pleadings to join actions that were initially brought separately, the consolidated cases "remain separate actions," thus allowing appeal from a final judgment in one action even if litigation in the other remains ongoing. *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994) ("[A] case which is disposed on summary judgment is appealable pursuant to 28 U.S.C. § 1291 despite the fact that the case with which it is consolidated has not been disposed."); *see also Klyce v. Ramirez*, 852 F.2d 568, 1988 WL 74155,

at *3 (6th Cir. 1988) (unpublished table decision) (dismissing appeal where plaintiff's amended complaint consolidated claims previously brought in five separate complaints and where order appealed from had only dismissed claims against some of the defendants named in the amended complaint). Here, the district court consolidated Mansfield's case with Brown's over the opposition of both plaintiffs. Thus, under *Beil*, the two cases remain separate actions, and our court has appellate jurisdiction to review the summary-judgment order in Mansfield's case.

## II

Mansfield has worked for the City since 1999 and has been a K-9 officer since 2008. In 2011, Mansfield signed a petition to opt into a proposed collective-action lawsuit against the City that would have alleged violations of the FLSA because the City was allegedly improperly deducting time for mealtime breaks from officers' paychecks. In 2012, the City agreed to change its pay policies, avoiding litigation. Major Hudgens was aware of the policy changes, and the City agrees with Mansfield that Mansfield's participation in the proposed action was protected activity under FLSA.

Also in 2011, Mansfield met with Major Hudgens to discuss the proposed elimination of the "Day-Flex Shift" (10:45 a.m. to 7:00 p.m.), which Mansfield had worked, and reassigning him to the evening shift (1:45 p.m. to 10:00 p.m.). Major Hudgens and others had decided to reduce the number of shifts from five to three. "At some point during this meeting," the City concedes, "Major Hudgens lost his temper and began directing profanity and other unprofessional statements at Officer Mansfield. Major Hudgens became so angry that Captain Watkins had to intervene and end the meeting." Appellee's Br. 6. Mansfield alleges, and the City does not seriously dispute, that from this point forward, Major Hudgens regularly behaved unprofessionally towards Mansfield.

In January 2012, Mansfield participated in an internal investigation of an allegation that Major Hudgens had discriminated against another officer based on her sex, for example by stating that female officers should not join the City's SWAT team. The investigators found that Major Hudgens had made inappropriate statements but had not engaged in unlawful harassment or discrimination. Major Hudgens was admonished not to retaliate against individuals involved in the investigation. The investigation ended in March 2012.

In August 2012, Mansfield filed a formal retaliation complaint with the City's human-resources department, alleging that Major Hudgens was treating Mansfield in a retaliatory manner on account of Mansfield's participation in the proposed FLSA litigation and the sex-discrimination investigation. The City again determined that Major Hudgens had made inappropriate comments but had not engaged in unlawful retaliation. Mansfield's complaint about Major Hudgens included the elimination of the day-flex shift, but the City's investigation noted both that the schedule change took effect on July 25, 2011, and that Mansfield's meeting with Major Hudgens about the schedule change was on July 27, 2011—*before* the City learned of the proposed FLSA action (in August 2011) and *before* Mansfield's involvement in the sex-discrimination investigation (in early 2012).

In August 2013, the City created a new Sergeant position in the K-9 unit at Major Hudgens's request. Police Chief Glenn Chrisman issued a memorandum announcing that the City would be accepting applications for the position, that the successful candidate would be required to complete K-9 handling training, and that the selection process would be governed by a policy titled "MPD General Order No. 224—Promotions."[1] Whereas Mansfield seizes upon

---

[1] There is some disagreement about a provision in the announcement that stated that the selected applicant "will supervise the K-9 unit in addition to being a patrol, tracking, or canine handler." The district court construed this to mean that the applicant would not necessarily need to be a canine handler. The parties appear to agree, however, that "patrol," "tracking," and "canine" are *each* distinct types of K-9 handlers. Appellant's Br. 37;

the announcement as evidence that *only* an officer who was not already a Sergeant should have been given the new position (otherwise, it would not be a "promotion"), the City argues, and we agree, that announcing a "promotion" does not prevent selecting an applicant who is transferring laterally, and that General Order No. 224 governs both promotions and lateral transfers anyhow.

Mansfield was one of eight applicants for the position. Five of the applicants, including Mansfield, were K-9 officers. The applicants included Sergeant Mark Wood, Officer Ryan Holobaugh (who had also lodged internal complaints against Major Hudgens relating to the unpaid mealtime breaks), Officer Angela Alexander, Officer Gregg Brown, and three others apart from Mansfield. Major Hudgens was not on the promotion board, although Major Hudgens (allegedly on account of his extensive knowledge of K-9 matters) submitted six proposed interview questions to Chief Chrisman for approval, and five of those questions were forwarded to the interviewer board to be asked of the applicants.

In the interview round of the selection process, in October 2013, a seven-member board interviewed the eight applicants. Two of the seven members ranked Sergeant Wood highest; two ranked Officer Alexander highest; two ranked Officer Holobaugh highest; one ranked Mansfield and Officer Brown as tied for first. The applicants then had point scores calculated: the top four candidates were Sergeant Wood (65.71 out of 100), Alexander (62.17), Holobaugh (62.14), and Mansfield (61.46). Eight days after the initial interview, Chief Chrisman and two other chiefs interviewed all eight candidates as well. Sergeant Wood and Officer Holobaugh were selected as finalists. Sergeant Wood was then chosen for the position.

Mansfield alleges that the City's interview process was a "sham": Major Hudgens and Captain Alan Smith "solicited" Sergeant Wood's application and promised him that if he got the

---

Appellee's Br. 46 ("a patrol, tracking, or [narcotic/explosive detection] canine handler"). The district court's misunderstanding of the phrase is immaterial, however, because the announcement required the successful applicant to undergo training only *after* selection—not *already* to possess the required dog-handling skills.

job, he would get a new car and his choice of dog. Appellant's Br. 41, 42 n.9. The City contends that Sergeant Wood was chosen because of his leadership experience and other skills, and that even though Sergeant Wood did not have K-9 experience (and Mansfield was the senior K-9 handler), Sergeant Wood was the more qualified candidate for the position.

**III**

For the reasons that follow, we affirm the judgment of the district court.

A

We review the district court's grant of summary judgment de novo. *See Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). We draw all reasonable inferences in favor of Mansfield. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017). If, on "the record taken as a whole," no rational trier of fact could find for Mansfield, then there is no genuine issue for trial, and the City is entitled to summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

B

Mansfield's Title VII and FLSA retaliation claims are governed by the same framework, within which Mansfield may prevail upon a showing of either direct evidence of retaliation or circumstantial evidence of retaliation. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (Title VII retaliation); *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (FLSA retaliation); *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) ("[A] plaintiff may establish discrimination either by introducing direct evidence of discrimination or

by proving inferential and circumstantial evidence which would support an inference of discrimination.").

## C

### *Mansfield Does Not Have Direct Evidence of Retaliation*

"[D]irect evidence is that evidence which, if believed, *requires* the conclusion that unlawful [behavior] was at least a motivating factor in the employer's actions." *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004); *see Johnson v. University of Cincinnati*, 215 F.3d 561, 577 n.7 (6th Cir. 2000) (finding direct evidence of discrimination where a university president allegedly said, "[w]e already have two black vice presidents. I can't bring in a black provost"); *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (finding no direct evidence of discrimination where a manager expressed "concern about the potentially detrimental effect on business of having an African–American comanager"). For Mansfield to prevail under a theory of direct evidence here, then, Mansfield would have to show both "blatant remarks" revealing the City's retaliatory intent, *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013), and that the retaliatory intent was a motivating factor in the City's decision not to promote Mansfield to Sergeant.[2]

Mansfield points to Chief Chrisman's statement that Mansfield had "been openly, vocally critical of the supervision, management, and administration of the K-9 unit and the police department" as direct evidence that Mansfield was denied the promotion because of his involvement in the FLSA matter and the sex-discrimination investigation. The district court rightly held, however, that Chief Chrisman's statement, even if believed to be the reason for denying Mansfield the promotion, does not directly prove that Mansfield's *protected activities*

---

[2] "When proving a claim through the use of direct evidence, a plaintiff does not have to proceed under the *McDonnell Douglas* burden-shifting framework that applies to circumstantial evidence cases." *DiCarlo*, 358 F.3d at 415.

with regard to the FLSA matter and the internal investigation were the reason for denying Mansfield the promotion—that would require an inferential step, and so Mansfield cannot prevail on a theory of direct evidence.

D

***Mansfield Does Not Have Circumstantial Evidence of Retaliation***

In the absence of direct evidence, Mansfield may prove his claims under the burden-shifting framework of *McDonnell Douglas*, 411 U.S. at 802–04. "Under *McDonnell Douglas,* Plaintiff bears the initial burden to establish a *prima facie* case of retaliation." *Laster*, 746 F.3d at 730. "If [Plaintiff] succeeds in making out the elements of a *prima facie* case of retaliation, the burden of production shifts [to the employer] to articulate a legitimate, non-retaliatory reason for the termination[]. If the [employer] satisfies its burden of production, the burden shifts back to [Plaintiff] to show that the reason was a pretext for retaliation. Although the burden of production shifts between the parties, the [Plaintiff] bear[s] the burden of persuasion through the process.'" *Evans v. Prof'l Transp., Inc.*, 614 F. App'x 297, 300 (6th Cir. 2015) (emphasis added) (citation omitted). Thus, stage one of the *McDonnell Douglas* analysis requires Mansfield to make out a prima facie case of retaliation; if, at stage two, the City can assert legitimate reasons for choosing Sergeant Wood over Mansfield, then, at stage three, Mansfield would have to show those reasons to be pretextual to prevail.

"To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster*, 746 F.3d at 730 (citations omitted). "To establish a *prima*

*facie* case of retaliation" under FLSA, similarly, "an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair*, 452 F.3d at 489.

Only the fourth element of the prima facie retaliation claims is disputed by the parties: causation. "In order to establish a causal connection between the protected conduct and the adverse action, a plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the adverse action would not have occurred but for his engagement in protected activity." *Russell v. Kloeckner Metals Corp.*, No. 3-13-0316, 2014 WL 1515527, at *3 (M.D. Tenn. Apr. 18, 2014) (citing *Dye v. Office of Racing Comm'n*, 702 F.3d 286, 205 (6th Cir. 2012)); *see Univ. of Tex. Sw. Med. Center v. Nassar*, 133 S. Ct. 2517, 2532–33 (2013). But even if Mansfield can demonstrate that there is a genuine issue of material fact as to causation, he cannot prevail unless he can *also* demonstrate that there is a genuine issue of material fact as to whether the City's reasons for choosing Sergeant Wood were pretextual.

*Causation*

As to causation, the district court noted that the K-9 Sergeant selection process did not begin until over a year after Mansfield had brought his formal complaint against Major Hudgens for Major Hudgens's unprofessional behavior, making it unlikely that Mansfield could show "temporal proximity" between Mansfield's protected conduct and the denial of Mansfield's application for the Sergeant position. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008). Mansfield has, however, cited a laundry list of "facts" (many of which are

more conclusory than factual) that, Mansfield argues, show that his being denied the promotion was caused by retaliation. This list, as recited in Mansfield's brief, includes, for example:

-Chief Chrisman's admission, under oath, that the City did not promote Officer Mansfield because he was outspoken against the administration.

-The City's advertisement of the K9 Sergeant position as a promotion, and not a lateral transfer.

-Major Hudgens's initial justification for the new position, to have a knowledgeable person to oversee the unit, and the highly technical nature of any K9 officer position.

-Officer Mansfield's involvement and leadership within the K9 unit prior to creation of the K9 Sergeant position, and the description of him by his former supervisor, Captain Watkins, as the "acting sergeant" of the unit.

[. . .]

-Major Hudgens's stark change in attitude towards the K9 unit and Officer Mansfield and his treatment of Officer Mansfield with the utmost disrespect within days of learning of the proposed meal break matter.

-Major Hudgens's memorandum complaining about salary compression issues caused by the new meal break policy, highlighting the fact that lieutenants now make more money than higher-ranked captains.

-Chief Chrisman's opposition to the policy change, statement that he would not pay an officer to eat, and repeated reminders to Sergeant Campbell about the policy's financial impact on the City, causing Sergeant Campbell to lodge a complaint with the City Manager.

[. . .]

-Crude statements made by Major Hudgens to Officer Mansfield, such as "the K-9 field is dead in the water"; "the K-9 field won't move forward until I'm fucking ready for it to and that's going to be a fucking long time;" and that he wanted to remove the letter "k" and the number "9" from his vocabulary.

Appellant's Br. 30–33.[3]

---

[3] Mansfield has offered this list of facts in support of the proposition that "[a] reasonable jury could determine from this proof that Officer Mansfield was denied the K9 Sergeant position *because of* his protected activity"—i.e., in support of his causation argument. Appellant's Br. 33 (emphasis added). Some of the omitted items in this list are more clearly relevant to Mansfield's pretext argument, so we will address them in the context of that argument, *infra*.

Given that "the burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met," *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), we will assume without deciding that Mansfield has met this burden, and we will proceed to the second and third stages of the *McDonnell Douglas* framework.

### *Pretext*

The district court held that at the second stage of *McDonnell Douglas*, the City had articulated a legitimate reason to give Sergeant Wood the position, and that at the third stage, Mansfield could not meet his burden of demonstrating that the City's reasons for choosing Wood (*inter alia*, his leadership experience) were pretextual. *Mansfield v. City of Murfreesboro, Tenn.*, No. 3:14-cv-01396, 2016 WL 5724208, at *4 (M.D. Tenn. Sept. 30, 2016). We agree.

Mansfield believes that Sergeant Wood's status as a Sergeant before applying for the K-9 position actually *helps* Mansfield make his case (indeed, Mansfield argues that the "most glaring proof" of pretext is that the K-9 position "was presented as a promotion, not a lateral transfer," Appellant's Br. 40). Mansfield also points to the fact that when the City created other Sergeant positions, it promoted officers from within the unit. Appellant's Br. 13. The City presented competent evidence that Sergeant Wood was selected for his leadership experience, however, and Mansfield has not presented any authority to support the proposition that offering a new position (even one styled as a "promotion") to a candidate seeking a lateral transfer is evidence of pretext for denying the position to other candidates.

Mansfield further argues that Major Hudgens "hand-picked" Sergeant Wood for the job, Appellant's Br. 11, but that would not—even if true—cut against the City's legitimate reasons for choosing Sergeant Wood.[4]

---

[4] The City contends that any of the testimony that Mansfield alleges would prove the existence of this promise is inadmissible hearsay (the testimony is from another officer recounting what Sergeant Wood heard Major

Mansfield further notes that another officer heard an assistant chief say to another chief, "All we have to do is come up with a good reason why we promoted Wood. Don't worry about it." But the City notes that this statement (or one like it) was made only after Mansfield had filed a claim with the EEOC, and that it in that context, it is simply a true statement made in preparation for an EEOC mediation—it would require either speculation or more evidence from Mansfield to establish that the assistant chief was referring to *fabricating* a reason as opposed to *articulating* a reason why Sergeant Wood was given the job.

Finally, Mansfield cites ample evidence of Major Hudgens's boorish behavior and unprofessional remarks. Appellant's Br. 30–33. And the City does not deny that Major Hudgens exerted major influence over the police department's day-to-day operation. But Mansfield has provided insufficient evidence to back up his assertion that "Major Hudgens ha[d] enough power to single-handedly decide who will be promoted," Appellant's Br. 35, let alone that Major Hudgens acted on such power, for a reasonable jury to conclude from this evidence that Sergeant Wood's selection for the position was mere pretext for denying the position to Mansfield.

The district court thus properly granted summary judgment for the City.

**IV**

As we have stated before, "employers are generally 'free to choose among qualified candidates'" in making their employment decisions. *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987)). "The law does not require employers to make perfect decisions, nor forbid them from making decisions

---

Hudgens tell him), and that Major Hudgens, Sergeant Wood, and Captain Smith all deny such a promise was made anyhow. "Hearsay evidence may not be considered on summary judgment." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). Our court has interpreted Fed. R. Evid. 801(d)(2)(D) broadly enough, however, to include an employee's statements about his employer's employment decisions to be statements "within the scope of his employment" that are admissible as nonhearsay against the employer. *See Carter v. Univ. of Toledo*, 349 F.3d 269, 275–76 (6th Cir. 2003). Accordingly, we will assume without deciding that Mansfield's evidence that Major Hudgens wanted Sergeant Wood to apply for the position would be admissible and is thus properly considered on summary judgment.

that others may disagree with." *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996). Rather, a rejected applicant "must show that a reasonable jury could conclude that the actual reasons offered by the defendant were a mere pretext . . . , not that other reasonable decision-makers might have retained the [rejected applicant]." *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 550 (6th Cir. 2004) (affirming district court's grant of summary judgment to employer in age-discrimination case). Here, Mansfield has failed to present a genuine issue of material fact as to pretext.

Were we to hold otherwise, we would implicitly be endorsing a simple method for any employee to win at least a day in federal court if not a windfall: engage in protected labor or other activity (vocally enough that everyone in the organization knows about it), apply for (and fail to secure) a promotion, and sue, claiming retaliation. In the absence of direct evidence of retaliation, the *McDonnell Douglas* framework provides a sufficiently wide opening for a potential litigant to bring a retaliation claim based on circumstantial evidence of retaliation—but to reverse the district court here and hold that Mansfield has demonstrated a fact question as to pretext here would widen that opening into a gulf, in a way that the law does not require and that our precedents caution against.

The district court's summary-judgment order is **AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** When, shortly a year after he filed a formal complaint against the Murfreesboro Police Department, senior K-9 Officer Trey Mansfield was passed over for a promotion to Sergeant of the K-9 unit in favor of an officer with no previous K-9 unit experience by a department Major who was known to say things like, "I think I'll fuck with Trey Mansfield today," what was Mansfield to think? What is a fact-finder to do when faced with evidence that, shortly after Mansfield filed a retaliation claim with the EEOC, an assistant police chief was heard saying, "[a]ll we have to do is come up with a good reason of why we promoted Wood [and not Mansfield]"? The majority seemingly answers both questions with the same response offered by Assistant Chief Roy Fields: "Don't worry about it." R. 38-5 (Campbell Dep. at 37) (Page ID #999). Because I disagree with the majority and find unpersuasive its conclusion that "to reverse the district court here and hold that Mansfield has demonstrated a fact question as to pretext here would" impermissibly widen the *McDonnell Douglas* framework "in a way that the law does not require and that our precedents caution against," Maj. Op. at 13, I respectfully dissent.

## I.

It is a "fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). "Summary judgment obviates the need for a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Brown v. Chapman*, 814 F.3d 447, 464 (6th Cir. 2016) (citing Fed. R. Civ. P. 56(a)). We have previously held that "[a] genuine dispute of material fact exists if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id*. (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). In evaluating "whether a genuine dispute of material

fact exists, the court must pierce the pleadings and assess the proof as represented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record." *Id.* It is a bedrock principle of any summary-judgment analysis that "the court must view the facts in the light most favorable to the non-moving party." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)).

## II.

Because the majority assumes without deciding that Mansfield established a prima facie case of retaliation, the burden shifts to the City to provide a legitimate, nondiscriminatory reason that Mansfield was not promoted. The City argues that Wood's experience and performance during the job-application process demonstrated that he was a more qualified applicant than Mansfield. Thus, the burden shifts back to Mansfield to establish that the City's articulated reason for not selecting Mansfield is pretext for discrimination. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 539 (6th Cir. 2014). An employee may demonstrate that an employer's stated reason for taking an adverse employment action was pretext by showing "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc)).

On the record before us, the evidence is clear that at some point after Mansfield filed a complaint with the EEOC, Assistant Chief Roy Fields was overheard saying "[a]ll we have to do is *come up with* a good reason of why we promoted Wood." R. 38-5 (Campbell Dep. at 37) (Page ID #999) (emphasis added). I believe that this quotation alone creates a factual dispute about whether the City's stated reason actually motivated its decision to promote Wood instead of Mansfield because it suggests that the rationale offered by the department may have changed

or shifted over time. But we need not look at the facts out of context; Fields's quotation coupled with "Major Hudgens's boorish behavior and unprofessional remarks" toward Mansfield and Hudgens's "major influence over the police department's day-to-day operation" creates a genuine dispute of material fact regarding the true reasons behind Mansfield not being promoted. Maj. Op. at 12. We have previously held that:

> Shifting justifications over time calls the credibility of those justifications into question. By showing that the defendants' justification for firing him changed over time, [the plaintiff] shows a genuine issue of fact that the defendants' proffered reason was not only false, but that the falsity was a pretext for discrimination.

*Pierson*, 749 F.3d at 540 (quoting *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002)). Although it is possible that the department chose Wood over Mansfield for perfectly legitimate and legal reasons, the quote about coming up with a reason for the decision could lead a reasonable jury to conclude that the department shifted its reasons over time. Because "[s]uch shifting justifications raise an inference that the proffered reasons are false and are pretext for discrimination," I conclude that summary judgment on the question of pretext is therefore improper. *Id.* at 541.

## III.

Finally, I emphasize the procedural posture of this case. We are reviewing this case on a motion for summary judgment. Our role is not to try the case. The question before us is only whether Mansfield has provided evidence sufficient to create a material factual dispute. Because we must view the facts in the light most favorable to Mansfield, the non-movant, and because we must draw all reasonable inferences in Mansfield's favor, we should find that summary judgment is improper. Because jurors of reason could disagree about why Wood was promoted and

Mansfield was not, summary judgment should not be granted. I would therefore reverse the district court's order granting summary judgment to the City and remand for further proceedings.