NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0491n.06

No. 24-1917

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 22, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| AHMED ELZEIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| ASCENSION GENESYS HOSPITAL, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |
| | ) | |

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Dr. Ahmed Elzein was a first-year internal medicine resident at Ascension Genesys Hospital, under a one-year renewable agreement. Several months into the program, Dr. Elzein missed multiple days of work due to medical issues. In order to return to work, he was required to get cleared by his treating physician or the hospital's health department. He never submitted the necessary paperwork. About five months later, after providing Dr. Elzein with a final reminder that he still needed clearance to return, Ascension opted not to renew his residency agreement. Dr. Elzein sued the hospital for disability discrimination; racial, national origin, and religious harassment; retaliation; and false imprisonment. The district court granted summary judgment in favor of Ascension on the discrimination, harassment, and retaliation claims, and declined to exercise supplemental jurisdiction over the claim for false imprisonment arising under state law. We affirm.

## BACKGROUND[1]

Dr. Elzein was a first-year resident at Ascension. He is a United States citizen, but he was born in Khartoum, Sudan. After spending much of his early life in the United States, Dr. Elzein returned to Sudan to attend a seven-year medical program at the University of Khartoum. He graduated with the equivalent of a U.S. medical degree in 2016. In June 2020, after moving back to the United States, Dr. Elzein began a residency program with Ascension. The program director, Dr. Barbara Pawlaczyk, served as his assigned mentor for the year.

As a resident at Ascension, his employment was governed by a one-year renewable Resident Training Agreement. As most relevant here, the agreement provided that any "[i]llness causing absence for longer than two days must be certified by Resident's private physician or hospital employee health department" before the resident may return to work. Resident Training Agreement, R. 26-22, PageID 451. The agreement did not require renewal but instead stated that upon the resident's successful completion of their first year, Ascension "may reappoint" the resident and extend their term for the next level of training. *Id.* at PageID 446.

On the morning of November 11, 2020, Dr. Elzein made a report to hospital security that an unknown individual had entered the resident's lounge and placed an object into a locker. In response, hospital security cleared the lounge to investigate. They located a brown paper bag but determined that its contents were not suspicious or dangerous.

Later that day, Dr. Natalia Baj, a senior resident, checked in with Dr. Elzein about his call to hospital security, as well as about his general mental state. According to Dr. Elzein, he

---

[1] At summary judgment, we construe the record in the light most favorable to Dr. Elzein, the non-moving party. *C.S. v. McCrumb*, 135 F.4th 1056, 1060 (6th Cir. 2025). To the extent we describe where the parties' stories diverge, we do so to provide context for the arguments analyzed below.

communicated to Dr. Baj that he had felt uncomfortable over the last few weeks because he was being harassed by other residents. Specifically, Dr. Elzein explained that on one occasion, while he was praying, a resident told him to go back to where he came from. On a separate day, a different resident said that her "n---er hurts," instead of saying that her neck hurt. The conversation ended shortly after.

A couple hours later, Dr. Pawlaczyk spoke with Dr. Elzein. According to Dr. Elzein, he restated to Dr. Pawlaczyk that he was being harassed, and again recounted the two specific incidents of harassment that he had described to Dr. Baj. During the conversation, Dr. Pawlaczyk also asked Dr. Elzein about a recent incident during which Dr. Elzein had refused to see a patient alone because he believed that the patient was psychotic and combative.

Ascension's doctors have a different account of what transpired that day. According to Dr. Baj, she checked in with Dr. Elzein because she had received multiple reports that he was acting abnormally and was worried about his mental health. In addition to the incident with the locker, other residents had reported that they had seen Dr. Elzein staring blankly into space for several hours and that he was recording other residents with his phone because he believed people were watching him. When Dr. Baj asked how he was doing, Dr. Elzein told her that strange things were happening and that he did not feel comfortable. He also explained that he thought a senior resident had put a talisman in his pocket and that he felt he could not sleep because when he closed his eyes, other residents would get close to him and he believed they were going to do something.

According to Dr. Pawlaczyk, she checked in with Dr. Elzein after she was contacted by Dr. Baj and another senior resident about his concerning behavior. The conversation lasted approximately two hours, during which Dr. Elzein explained that he was feeling differently than usual, and that he might have a fever. At some point, one of the hospital's psychologists joined the

conversation. Both Dr. Pawlaczyk and the psychologist recommended that Dr. Elzein go to the emergency room to be checked out. Though Dr. Elzein initially resisted, Dr. Pawlaczyk testified that he eventually agreed to go. Dr. Elzein disputes that account and maintains that he was forcibly escorted by hospital security. Regardless, Dr. Elzein went to the emergency room that night.

After his initial emergency room evaluation, Dr. Elzein was admitted to Havenwyck Hospital, where he was treated for paranoid delusions. He was discharged five days later. Because Dr. Elzein had been absent from work for more than two days, he was required to submit a certification that he was cleared to return. Under the Resident Training Agreement, that certification could be provided by either his private physician or the hospital's employee health department.

Ascension's health department initially cleared Dr. Elzein to return to work on November 23, 2020. But he had explained to the evaluating physician that he was out for only "cold like symptoms." Ascension Return to Work Form, R. 25-14, PageID 245. He also provided the physician with a return to work note from Havenwyck, which was signed by a social worker but not his treating physician. After Dr. Elzein took a COVID-19 test that came back negative, the evaluating physician cleared him to return to work with "no restriction," advising him to "mask as appropriate." *Id.*

Ascension revoked Dr. Elzein's return to work authorization after it came to light that he had provided an inaccurate reason for his absence and therefore failed to obtain the appropriate clearance. That same day, Dr. Pawlaczyk and an individual from Ascension's human resources department called Dr. Elzein to tell him that he needed to be evaluated by his treating physician or Dr. Andrew Vosburgh, a physician in the hospital's occupational health department, in order to be properly cleared. Dr. Elzein indicated that he would submit the necessary paperwork.

During that call, Dr. Elzein asked to speak privately with Ascension's human resources representative. Dr. Elzein explained that on November 11, 2020, he was experiencing acute stress because he had told Dr. Baj and Dr. Pawlaczyk that he was harassed while praying, but Dr. Pawlaczyk did not believe him. Dr. Elzein also explained that he refused to see Dr. Vosburgh because he believed that Dr. Vosburgh knew too much personal information about him.

After the call, the human resources representative investigated Dr. Elzein's report but ultimately found that it was unsubstantiated. Both Dr. Baj and Dr. Pawlaczyk deny that Dr. Elzein reported the incidents of harassment to them on November 11, 2020. However, Dr. Baj admitted that Dr. Elzein told her about the harassment that occurred while he was praying on the day that he was discharged from Havenwyck.

Dr. Elzein never submitted the proper return to work paperwork. In December 2020, after Ascension reminded Dr. Elzein that he needed to submit a valid certification, he was placed on a leave of absence. Ascension extended his leave of absence in January 2021. At that point, Ascension again reminded Dr. Elzein to submit his paperwork confirming that he was able to return to work. In early April 2021, Ascension informed Dr. Elzein that if he did not provide the required physician's note or obtain work clearance from Ascension's health department, the hospital would "proceed with the non-renewal process within fourteen days." Ascension Letter to Dr. Elzein, R.25-11, PageID 236. Dr. Elzein did not respond, and two weeks later, Ascension informed him that his residency contract would not be renewed.

After Dr. Elzein's residency agreement was not renewed, he brought this suit against Ascension. He claimed that Ascension discriminated against him on the basis of disability, in violation of the Americans with Disabilities Act (ADA); that he suffered workplace harassment on the basis of his race, national origin, and religion, in violation of Title VII of the Civil Rights

Act of 1964; and that Ascension retaliated against him after he reported the harassment, also in violation of Title VII. Additionally, Dr. Elzein brought a claim for false imprisonment under Michigan law, alleging that he was forcibly taken to the emergency room against his will.

The district court granted summary judgment in favor of Ascension on all of Dr. Elzein's federal claims. With respect to his disability discrimination and retaliation claims, the district court concluded that Ascension's stated reason for its nonrenewal of Dr. Elzein's residency agreement was not pretextual. And with respect to Dr. Elzein's harassment claims, the district court held that the alleged incidents were not sufficiently severe or pervasive. Finally, because the district court had granted summary judgment to Ascension on all of Dr. Elzein's federal claims, it declined to exercise supplemental jurisdiction over Dr. Elzein's remaining state law claim for false imprisonment.

Dr. Elzein timely appealed.

## DISCUSSION

### I.      Standard of Review

We review the district court's grant of summary judgment de novo. *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 559 (6th Cir. 2022). Ascension is entitled to summary judgment if it has shown that there is "no genuine dispute as to any material fact" underlying Dr. Elzein's claims and it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of material fact is genuine if, based on the evidence, a reasonable jury could decide for Dr. Elzein. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775 (6th Cir. 2016). At this stage, we construe the evidence and draw all reasonable inferences in favor of Dr. Elzein. *Doe v. Univ. of Ky.*, 111 F.4th 705, 715 (6th Cir. 2024).

## II.      ADA Discrimination Claim

We first turn to Dr. Elzein's claim for disability discrimination under the ADA. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). Dr. Elzein may prove discrimination through direct or circumstantial evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008). Because he seeks to prove his case through circumstantial evidence, the *McDonnell Douglas* burden shifting framework applies. *Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

Under the *McDonnell Douglas* approach, Dr. Elzein bears the initial burden of establishing a prima facie case. To establish a prima facie case under the ADA, Dr. Elzein must demonstrate that (1) he has a disability, (2) he was otherwise qualified for the job, with or without reasonable accommodations, (3) he suffered an adverse employment action, (4) Ascension knew or had reason to know of his disability, and (5) his position remained open or he was replaced. *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566–67 (6th Cir. 2023).

If Dr. Elzein establishes a prima facie case, the burden shifts to Ascension to demonstrate that it had "a legitimate, nondiscriminatory reason" for taking the adverse employment action. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017). If Ascension carries its burden, then Dr. Elzein must show that "the reason given by [Ascension] was actually a pretext designed to mask unlawful discrimination." *Id.* Our caselaw does not require any given method for proving pretext. *See Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020). Usually, an employee can show pretext by demonstrating that the proffered reasons had

"no basis in fact, . . . did not actually motivate the employer's action, or . . . were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

The parties dispute whether Dr. Elzein can make out a prima facie case, but we need not resolve that question because he fails on pretext. *See Carson v. Ford Motor Co.*, 413 F. App'x 820, 823 (6th Cir. 2011). Even assuming that Dr. Elzein carried his initial burden, he has not shown that Ascension's stated reason for nonrenewal of his contract—i.e., that he failed to submit the proper return to work paperwork—has no basis in fact or did not actually motivate Ascension. Dr. Elzein does not dispute that he failed to comply with the terms of his residency agreement that governed his return to work. Under his agreement, Dr. Elzein was required to submit a note from his personal physician or Ascension's health department certifying that he could return to work. He did not do so, despite being reminded on multiple occasions that he was in noncompliance with hospital policy. Although Dr. Elzein attempted to submit a return to work note from a social worker at Havenwyck, that did not suffice under the agreement's requirement because the note was not signed by his treating physician. Nor did his initial clearance from Ascension's health department satisfy the requirement, as it was based on Dr. Elzein's own false statement that he was absent from work due to cold-like symptoms. He does not point to any evidence that would undermine these facts. And because the factual record establishes that Dr. Elzein did not satisfy the requirements to be cleared to return to work, he cannot show that Ascension's stated reason for nonrenewal had no basis in fact.

Similarly, Dr. Elzein cannot show that Ascension was actually motivated by discriminatory intent, as opposed to Dr. Elzein's noncompliance with the Resident Training Agreement. Dr. Elzein argues that Ascension placed "far more stringent requirements on [him] than what is required" by the agreement because of his disability. Appellant Br. at 29. As evidence for this

theory, Dr. Elzein argues that Ascension conditioned his return to work on him seeing Dr. Vosburgh, specifically, and not just any physician. But on the record before us, it is clear that Dr. Elzein was provided the choice to be cleared by his treating physician at Havenwyck, as an alternative to seeing Dr. Vosburgh. And, moreover, Dr. Elzein does not argue that had he complied with the procedures to be cleared to return to work, Ascension would still have chosen to terminate his residency agreement because of his purported disability. Because Dr. Elzein cannot show that Ascension fired him as a pretext for disability, the district court properly granted summary judgment in favor of Ascension on this claim.

## III.    Title VII Harassment Claims

We next turn to Dr. Elzein's two separate claims for harassment under Title VII—one on the basis of race and national origin and the other on the basis of religion. To prevail on his hostile work environment claims, Dr. Elzein must show that (1) he is a member of a protected class, (2) he was subject to unwelcome harassment, (3) the harassment was based on that protected trait, (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment by creating an intimidating, hostile, or offensive work environment, and (5) Ascension knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (racial harassment); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (religious harassment).

Dr. Elzein appeals solely on the ground that the district court erred in finding that the harassment was not sufficiently severe or pervasive. But even if Dr. Elzein is correct that all of his allegations, taken together, show that the harassment was severe and pervasive, he still must establish that Ascension knew or should have known about the harassment, yet "failed to take prompt and appropriate corrective action." *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321,

338 (6th Cir. 2008). The district court found that Ascension promptly investigated the harassment that Dr. Elzein reported. It further considered Dr. Elzein's failure to respond to Ascension's argument that it appropriately addressed the reported harassment "as a concession that Ascension prevails on that element" of Dr. Elzein's claim. D. Ct. Op., R. 31, PageID 619 n.2. Despite the district court faulting Dr. Elzein for not addressing this element of his claim, he has failed to make any argument about it on appeal. He did not address it in his opening brief; Ascension repeated the same argument in its brief; and Dr. Elzein did not file a reply. Instead, Dr. Elzein argues only that the conduct was severe and pervasive. Accordingly, because Dr. Elzein has not established that Ascension failed to investigate or take appropriate corrective action, the district court properly granted summary judgment in favor of Ascension.

## IV.     Title VII Retaliation Claim

Dr. Elzein also brings a Title VII claim against Ascension for retaliation, on the theory that his agreement was not renewed because he reported the incidents of harassment. For retaliation claims based on circumstantial evidence, we again apply the *McDonnell Douglas* burden-shifting framework. *See Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 613 (6th Cir. 2019). To establish a prima facie case, Dr. Elzein must show that (1) he engaged in a Title VII protected activity, (2) his employer knew about it, (3) his employer took an adverse employment action against him, and (4) there was a causal connection between his protected activity and the adverse employment action. *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021). If he succeeds in making out a prima facie case, the burden shifts to Ascension to "articulate a legitimate, non-retaliatory reason for [his] termination." *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 236 (6th Cir. 2017) (quoting *Evans v. Pro. Transp., Inc.*, 614 F. App'x 297, 300 (6th Cir. 2015)).

If Ascension carries its burden, the burden then shifts back to Dr. Elzein to show that the stated reason was a "pretext" to mask the retaliation. *Id.*

Dr. Elzein has not made out a prima facie case for retaliation. It is undisputed that Dr. Elzein engaged in protected activity when he reported the alleged harassment, that Ascension knew that Dr. Elzein had made such a report, and that it took an adverse employment action against him by not renewing his contract. But Dr. Elzein has not established a causal connection between his protected activity and the adverse employment action—the fourth element of a prima facie retaliation case. At the prima facie stage, the burden of proving causation is minimal. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009). Yet a plaintiff must put forth some evidence from which a causal connection between the protected activity and the adverse action may be inferred. *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 699 (6th Cir. 2013). In his briefing before the district court and this court, Dr. Elzein simply recited the elements of a prima facie case for retaliation, and then proceeded to argue that under the third step of the *McDonnell Douglas* analysis, Ascension's stated reason for not renewing his contract was pretextual. But Dr. Elzein did not point to any evidence from which it could be reasonably inferred that Ascension's nonrenewal of his contract was related to his protected conduct. Nor does he advance such a theory. Dr. Elzein therefore fails to establish a causal connection, and by extension, a prima facie case for retaliation.

Even assuming that Dr. Elzein established a prima facie case, his claim still fails as a matter of law. On the record before us, and for the reasons previously stated, no reasonable jury could conclude that Ascension's justification for not renewing Dr. Elzein's contract was pretextual. He simply has not provided any evidence that Ascension used his failure to comply with its

reinstatement protocol as an excuse to punish him for reporting his alleged harassment. Therefore, the district court did not err in granting summary judgment in favor of Ascension on this claim.

## V.       State Law False Imprisonment Claim

Finally, we turn to Dr. Elzein's claim for false imprisonment, which arises under state law. We review a district court's decision to decline supplemental jurisdiction over a plaintiff's state law claims for abuse of discretion. *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022). "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 528–29 (6th Cir. 2008)). Supplemental jurisdiction is a "doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003) (quoting *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir. 1986) (per curiam)). Where all federal claims have been dismissed from the case, federal courts frequently decline to exercise supplemental jurisdiction over a plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996). Indeed, Dr. Elzein offers no reason on appeal why, after dismissing his other claims, the district court should not have declined to exercise supplemental jurisdiction. That is what the district court did here, and it is not an abuse of discretion.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of Ascension.