RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LESLIE CLABO,

　　　　　　　*Plaintiff-Appellant*,

　　*v.*

JOHNSON & JOHNSON HEALTH CARE SYSTEMS, INC.;
ETHICON ENDO-SURGERY, INC.,

　　　　　　　*Defendants-Appellees*.

┐
│
│
│
├ No. 20-5168
│
│
│
┘

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:19-cv-00154—Curtis L. Collier, District Judge.

Argued: November 17, 2020

Decided and Filed: December 14, 2020

Before: KETHLEDGE, DONALD, and LARSEN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Richard Baker, THE LAW OFFICE OF RICHARD BAKER, Knoxville, Tennessee, for Appellant. Susanna M. Moldoveanu, BUTLER SNOW LLP, Memphis, Tennessee, for Appellees. **ON BRIEF:** Richard Baker, THE LAW OFFICE OF RICHARD BAKER, Knoxville, Tennessee, for Appellant. Susanna M. Moldoveanu, Amy M. Pepke, BUTLER SNOW LLP, Memphis, Tennessee, for Appellees.

_____

## OPINION

_____

　　BERNICE BOUIE DONALD, Circuit Judge. Beginning in 2003, Leslie Clabo had several procedures performed to correct certain painful and uncomfortable medical issues.

To alleviate her suffering, Clabo was implanted with a TVT transvaginal mesh device that was manufactured by Defendants-Appellees, Johnson & Johnson Health Care Systems, Inc. and Ethicon Endo-Surgery, Inc. (collectively, "the Defendants"). Over time, Clabo was forced to repair and replace the mesh product because it eroded and would intermittently not serve its intended purpose. After Clabo initiated a products liability lawsuit, in which she alleged that the Defendants were liable for her injuries under Tennessee law, Defendants filed a motion for summary judgment, asserting that Clabo's claims were time-barred in accordance with Tennessee's statute of repose. When Clabo subsequently filed a motion to amend her complaint and add new claims related to her injuries, the Defendants argued that her motion was futile because all of her claims were time-barred. The district court ultimately agreed with the Defendants, granted their motion for summary judgment, and denied Clabo's motion to amend her complaint. On appeal, Clabo's primary contention is that the district court erred in determining her date of injury. Because the record undoubtedly demonstrates that Clabo's injuries occurred outside of the applicable statute of repose period, we AFFIRM the district court.

I.

In May 2003, Leslie Clabo underwent surgery to correct two conditions that she developed: pelvic organ prolapse and urinary incontinence. To treat these conditions, Clabo's doctor implanted her with a TVT transvaginal mesh sling device that the Defendants manufactured. By 2006, she began experiencing additional discomfort, including pelvic pain, urinary issues, scarring, and pain during sexual intercourse. After being notified by her doctor that the mesh from her device had eroded through her vaginal canal, Clabo had a second procedure in April 2006 to remove the TVT implant. Approximately a month later, Clabo had surgery to implant a mesh sling similar to the one she had removed. In 2011, Clabo had yet another surgery. Again due to mesh erosion, she had pieces of her most recent implant removed and other parts repaired. Though Clabo had several procedures performed to address her abovementioned medical issues, she alleges that it was not until July 2012 that she finally realized (after speaking with a physician-friend) that the TVT mesh product was the likely cause of her persistent pain and suffering.

Seeking compensation for her resulting impairments, on May 6, 2013, Clabo filed a lawsuit against the Defendants, asserting products liability claims under the Tennessee Products Liability Act of 1978 ("TPLA"), Tenn. Code Ann. §§ 29–28–101 *et seq.* Defendants subsequently filed a motion for summary judgment, arguing that Clabo's claims were barred by Tennessee's statute of repose, which prohibits products liability claims brought more than six years after the date of the injury that gave rise to the suit. *See* Tenn. Code. Ann. § 29-28-103(a). Clabo responded by filing a motion to amend her complaint, and the Defendants opposed Clabo's motion on futility grounds. The district court denied Clabo's motion to amend and granted summary judgment in favor of the Defendants, finding that Clabo's initial injury occurred during 2006—making her claims time-barred, and therefore, futile. Clabo timely appealed, and now challenges the district court's date of injury determination. Clabo also alleges that the district court wrongfully decided to strike her supplemental brief, which she filed in response to the Defendants' summary judgment motion.

## II.

We begin with the Defendants' motion for summary judgment. The Court reviews a district court's grant of summary judgment de novo, "drawing all reasonable inferences in favor of the nonmoving party." *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quotation omitted). Summary judgment is appropriate where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, summary judgment must be entered where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In order for the non-movant to defeat a summary-judgment motion, there must be evidence on which the jury could reasonably find for the [non-movant]." *Bard v. Brown County*, 970 F.3d 738, 748 (6th Cir. 2020) (alteration in original) (quoting *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)) (internal quotation marks omitted); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Whether or not the district court erred by granting the Defendants' summary judgment motion can be resolved by answering one question: when exactly was Clabo first injured by the

Defendants' product?  Defendants argue that, if their product caused Clabo's injury, the injury first occurred in 2006, when she had surgery to remove the eroded mesh.  But Clabo asserts that at the earliest, she was not injured by the Defendants' product until after her 2011 surgery.  Alternatively, Clabo claims that she was injured by the mesh device in 2012, because at that point, she was informed by a physician that the mesh device was the cause of her medical problems.  The resolution to this issue therefore depends on how "injury" is defined.

The term "injury" is not defined in the TPLA, so we "are obliged to decide the case as we believe the [Tennessee] Supreme Court would." *Cobb v. Tenn. Valley Auth.*, 595 F. App'x 458, 459 (6th Cir. 2014) (quoting *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 385 (6th Cir. 2009)).  In doing so, we are to be mindful that the Tennessee Supreme Court would "ascertain and give effect to the legislative intent without unduly restricting or expanding [the] statute's coverage beyond its intended scope." *Daron v. Dep't of Correction*, 44 S.W.3d 478, 480–81 (Tenn. 2001) (quotation omitted).  Moreover, if the language in the Tennessee statute in question is unambiguous, we will "apply its ordinary and plain meaning." *Pennycuff v. Fentress Cnty. Bd. of Educ.*, 404 F.3d 447, 452 (6th Cir. 2005) (quoting *Bowden v. Memphis Bd. of Educ.*, 29 S.W.3d 462, 465 (Tenn. 2000)).

Because the text of Tenn. Code Ann. § 29-28-103(a)—"[a]ny action against a manufacturer or seller of a product for injury to person or property caused by its defective or unreasonably dangerous condition . . . must be brought within six (6) years of the date of injury"—is rather unambiguous, we give "injury" its plain meaning.  *Black's Law Dictionary* defines "injury" as "[a]ny harm or damage" or "[a]nything said or done in breach of a duty not to do it, if harm results to another in person." *Injury*, Black's Law Dictionary (11th ed. 2019).  Because "harm" is defined by *Black's Law Dictionary* as "[i]njury, loss, damage; material or tangible detriment," *Harm*, Black's Law Dictionary (11th ed. 2019), "date of injury," in this context, refers to the instance when an individual was first physically affected by a particular defect in a seller or manufacturer's product in a manner that was to his or her detriment.

This definition aligns with the Tennessee legislature's intent behind enacting the TPLA.  The Tennessee legislature intended the TPLA to "limit the time within which a suit alleging

products liability may be brought and thereby address the actuarial concerns of the insurance industry and allow for accurate assessment of liability exposure for insurance purposes." *Sharp v. Richardson*, 937 S.W.2d 846, 850 (Tenn. 1996). It was significant that the Tennessee legislature chose to set forth a specific limitations period for such actions, rather than exclusively rely on other more general limitations periods, because it demonstrates that while this provision might lead to harsh results, it is necessary to achieve the Tennessee legislature's desired outcomes. *See Penley v. Honda Motor Co.*, 31 S.W.3d 181, 187 (Tenn. 2000). With that definition in mind, we turn to analyzing the evidence presented by the parties.

The evidence in the record reveals that Clabo was injured by Defendants' product as early as 2006. Clabo's own testimony confirms this finding:

> Q:   [I]s it correct that a doctor informed you that the mesh had begun to erode through the vaginal canal?
>
> A:   That's correct.
>
> Q:   And is that the reason that you then had surgery with Dr. [Frederick] Klein in April of 2006 to remove the eroded mesh?
>
> A:   Yes.
>
> …
>
> Q:   And after that surgery with Dr. Klein, you then a month later had another sling implanted by Dr. Klein?
>
> A:   Correct.
>
> …
>
> Q:   And I've got a note from Dr. Klein about mid-May of '06 where you were wanting to have that mesh replaced ASAP. Does that sound right?
>
> A:   It probably does.

Clabo additionally makes similar admissions in a fact sheet that she filed in connection with a related multidistrict litigation matter. On the fact sheet, in response to a question regarding when she was first injured by the Defendants' product, Clabo replied that in 2006, she first realized that she could feel exposed tape from the mesh device. Clabo also admitted that in 2006, her partner felt something scratch him during sexual intercourse. The evidence before the Court, which comes in the form of Clabo's own statements and acknowledgments, proves that she was

"injured" by Defendants' product in April 2006. It was by this time that Defendants' TVT mesh device began to erode, and caused Clabo to have surgery to replace the damaged product.

The record here is therefore easily distinguishable from that in *Parton v. Johnson & Johnson, et al.*, 821 F. App'x 601 (6th Cir. 2020), where we held that a very similar claim was not barred by the Tennessee statute of repose. *Id.* at 604. There, the plaintiff testified merely that she felt "pain" more than six years before she brought suit. *Id.* at 603. And in that case the plaintiff's mesh began to emerge through her vaginal tissue only a year before she filed suit, rather than, as here, seven years before. *Id.* On the record in *Parton*, therefore, a reasonable jury would not be compelled to find that the plaintiff was injured by the mesh more than six years before she filed suit.

Furthermore, Clabo's two proposed dates of injury are inaccurate. First, Clabo asserts that the earliest possible date of her injury is July 2011, because that is when she had additional surgeries for removal of parts of the sling that had perforated tissue into her vaginal walls. Though Clabo did have a procedure in 2011 to yet again correct a problem she was having with her mesh sling device, she does not explain why her 2011 surgery was any different than the one she underwent in April 2006. Both procedures transpired due to an ineffective TVT mesh device, and Clabo fails to distinguish these two surgeries in a way that could lead the Court to accept that she was first injured by Defendants' device in July 2011. Second, Clabo contends that in the alternative, she was injured by the Defendants' mesh device in July 2012, when she was "advised by a medical doctor friend of the probable association of TVT mesh and her continuing problems." By making this argument, Clabo is essentially requesting that the Court apply the discovery rule to excuse her from being subjected to Tennessee's statute of repose restrictions. *See Potts v. Celotex Corp.*, 796 S.W.2d 678, 680 (Tenn. 1990).[1] However, Tennessee courts have declined to extend the discovery rule to toll the Tennessee statute of repose. *See Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005) ("A statute of repose . . . limits the time within which an action may be brought and is unrelated

---

[1]"Under the 'discovery rule' applicable in tort actions, including but not restricted to products liability actions predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts*, 796 S.W.2d at 680.

to the accrual of any cause of action."). And thus, Clabo has not demonstrated that she was first injured in 2011 or 2012.

Accordingly, the Court affirms the district court's grant of summary judgment in favor of the Defendants because Clabo filed her initial complaint on May 6, 2013—more than six years after her injury in 2006—and as a result, her claims are time-barred by Tennessee's statute of repose.

The Court also notes that the district court appropriately denied Clabo's motion to amend as futile. In her amended complaint, Clabo asserts that in 2006, she began to experience medical issues that were seemingly related to the implantation of the Defendants' mesh device.[2] Thus, her amended complaint would not have assisted Clabo with successfully obtaining the relief she sought; and consequently, there was no error on the part of the district court in this regard.

### III.

Clabo also seeks reversal of the district court's decision to strike her supplemental brief filed in response to Defendants' motion for summary judgment. The Court reviews "the decision to grant or deny a motion to strike for an abuse of discretion, and decisions that are reasonable, that is, not arbitrary, will not be overturned." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003) (quotation omitted). When striking Clabo's supplemental response, the district court reasoned that in violation of local rule E.D. Tenn. L.R. 7.1(d), Clabo neglected to receive approval from the district court prior to filing her supplemental brief.[3] Clabo now argues that because she asked the district court for permission to file her brief, the court erred by finding that she violated E.D. Tenn. L.R. 7.1(d). Clabo's argument is misplaced. Even though Clabo might

---

[2]Although it is generally inappropriate to deny a motion to amend on futility grounds because the claims within a complaint are time-barred, we have previously held that such a denial is permissible if the complaint affirmatively shows that the plaintiff's claims are barred by an applicable statute of limitations. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

[3]According to E.D. Tenn. L.R. 7.1(d), "No additional briefs, affidavits, or other papers in support of or in opposition to a motion shall be filed without prior approval of the Court, except that a party may file a supplemental brief of no more than 5 pages to call to the Court's attention developments occurring after a party's final brief is filed." Clabo's supplemental brief did not fall under E.D. Tenn. L.R. 7.1(d)'s exception because in her brief, she attempted to make additional arguments, and she did not endeavor to bring any new developments to the district court's attention.

have inquired about obtaining the district court's permission to file her supplemental brief, the district court never approved her request. *See* E.D. Tenn. L.R. 7.1(d) (emphasis added). Because the district court did not consent to Clabo's filing, the court did not abuse its discretion. The Court therefore must affirm the district court's decision to strike Clabo's supplemental filing.

## IV.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment and denial of Clabo's motion to amend, as well as the district court's decision to strike Clabo's supplemental brief.