NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0182n.06

Case No. 22-3577

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 21, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JACQUELYN BERRY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| UNITED STATES POSTAL SERVICE, | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: GILMAN, READLER, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** Jacquelyn Berry appeals the district court's grant of summary judgment to the United States Postal Service on claims that she brought pursuant to the Fair Labor Standards Act ("FLSA"). Berry claims that USPS failed to pay her overtime and retaliated against her for filing a union grievance about the alleged denial of overtime. For the reasons stated below, we **AFFIRM**.

## I.

Berry began working at USPS as a mail carrier in 1989. In 2016, Berry sought a temporary supervisor position and officially began her supervisory detail at the South Columbus, Ohio, station in January 2017. Temporary supervisors are nonexempt employees subject to the FLSA.

USPS hourly employees use an Electronic Badge Reader ("EBR") to clock in and out, which downloads the time into a Time and Attendance Collection System ("TACS").

Berry typically worked eight hours each workday with a one-hour lunch break, though the start and end times varied. When Berry served as the opening supervisor, she generally worked from 7:00 a.m. to 4:00 p.m. with an hourlong lunch break. As the closing supervisor, she generally worked from 11:00 a.m. to 8:00 p.m. with an hourlong lunch break.

Every workday, hourly employees make four swipes on the EBR to form their daily "clock rings": (1) at the beginning of the workday, (2) when taking a lunch breach, (3) when returning from the lunch break, and (4) at the end of the workday. R. 32-4, PageID 714. A clock ring error occurs when the EBR does not record the employee's card swipe; for example, when the EBR is updating or the employee forgets to swipe her card. An employee cannot enter her own time into TACS in any way other than swiping her badge in the EBR, so when an error occurs, she must have a supervisor manually enter her time. The employee must complete and submit a PS Form 1260 to her supervisor documenting the time she worked, and the responsibility for submitting the form always lies with the employee rather than with the supervisor.

Kelly Harris, Berry's direct supervisor, authorized her to work eight hours of overtime with a one-hour lunch break on October 10, 2017. Although Berry claimed to swipe her badge all four times that day to make her clock ring, EBR records showed no swipes at the beginning or end of the workday. Harris discovered Berry's clock ring error that evening and corrected the error to ensure that Berry would receive overtime pay. In correcting the error, Harris indicated that Berry began work at 7:00 a.m. and ended her shift at 4:00 p.m., with a lunch that lasted one hour and twelve minutes as reflected in TACS. Thus, USPS credited Berry with working seven hours and 48 minutes of overtime on October 10.

On October 12, Berry noticed the edits to her time for October 10 and sent a text message to Harris that evening, stating: "Kelly did you change my clock rings because someone did." R. 27,

PageID 197–98; R. 31, PageID 1063. Harris did not recall receiving the text message. On October 13, Berry brought the issue to Harris's supervisor, Patrick LaRosa, asking who had edited her clock rings, but not asserting that the records were inaccurate in their reflection of her time worked. Specifically, Berry did not claim that she had worked more than seven hours and 48 minutes of overtime as reflected by the time records.

The next day, Berry filed a grievance through her union steward. The grievance asserted that management had violated the employee and labor-relations manual when "they deleted [Berry's] overtime rings" for October 10. R. 32-5, PageID 866. Berry later testified that she filed the grievance to determine who edited her clock rings, not because her time had been deleted. On October 27, Harris met with Berry's union representative to formally review Berry's grievance. The union representative examined Berry's records at the meeting and concluded that Berry had not swiped her card when she began and ended work on October 10. Berry maintained that she had made her clock rings and that Harris had deleted her time. Berry did not, however, indicate in the meeting how much additional overtime compensation she believed USPS owed her. The union determined that Berry's grievance was false and elected not to pursue the grievance further, administratively closing the grievance.

Following the October 27 meeting, Harris reported to LaRosa that Harris could no longer trust Berry in the temporary-supervisor role due to her continued insistence that Harris had deleted Berry's clock rings. After this conversation, LaRosa met with Berry and asked her to sign a PS Form 1260 specifying the time she worked on October 10. Berry acknowledged that LaRosa told her that she would have to return to working as a mail carrier until the conclusion of the investigation if she did not complete the PS Form 1260, but she still declined to complete the form, citing concerns of signing a form that did not accurately reflect her time worked. LaRosa did not

require Berry to corroborate Harris's entries; instead, he asked her to simply "write down something." R. 27, PageID 270.

In November 2017, Berry filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that USPS discriminated against her based on her age and race when Harris edited the time she worked on October 10 and that USPS retaliated against her by demoting her to a non-supervisory position. Berry submitted an affidavit to the EEOC stating that although she could not recall the specific time she arrived at work on October 10, she "was paid less money" because "my time did not add up to 8 hours; it was posted as less." R.32-5, PageID 843–44. In July 2020, Berry submitted a new affidavit to the EEOC stating for the first time that she began work at 6:00 am on October 10, but she did not indicate the time her shift ended. The administrative law judge granted summary judgment in favor of USPS.

On October 9, 2020, Berry filed suit, asserting two claims under the FLSA: (1) that USPS willfully failed to pay Berry overtime, and (2) that USPS willfully retaliated against her for reporting FLSA violations. The parties cross-moved for summary judgment. The district court granted USPS's summary judgment motion and denied Berry's motion. Berry now appeals.

**II.**

We review a district court's grant of summary judgment de novo. *Clabo v. Johnson & Johnson Health Care Sys., Inc.*, 982 F.3d 989, 992 (6th Cir. 2020). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A.

*FLSA Overtime Claim.* The FLSA permits nonexempt employees to receive "overtime compensation for each hour worked in excess of 40 hours in each workweek." *Integrity Staffing*

*Sols., Inc. v. Busk*, 574 U.S. 27, 31 (2014); *see also* 29 U.S.C. § 207. To succeed on a claim under the FLSA, a plaintiff must prove by a preponderance of evidence that she "performed work for which [she] was not properly compensated." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute as stated in Integrity Staffing*, 574 U.S. at 31–32). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). Affidavits that contain no specific facts but are merely conclusory cannot create a genuine dispute of fact sufficient to defeat summary judgment. *Doren v. Battle Creek Health Sys.*, 187 F.3d 595, 598–599 (6th Cir. 1999). Additionally, if an employer has a reasonable process in place for an employee to report uncompensated work time and the employee fails to follow the process, the employer is not liable for non-payment. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).

Berry has not created a genuine dispute of fact on her overtime claim. She has presented no evidence that, on October 10, 2017, she worked more than the seven hours and 48 minutes of overtime for which USPS compensated her. On October 27, when LaRosa requested that Berry indicate how much time she worked on October 10, she refused. In one affidavit Berry submitted to the EEOC, Berry stated that she "was paid less money" for October 10 but did not specify an amount that she believed she was entitled to. In another affidavit, Berry indicated that she began work at 6:00 a.m. but did not indicate when her workday ended. Simply put, Berry has failed to establish that she performed any uncompensated work on October 10.

Berry argues that she is entitled to a relaxed burden on her overtime claim because USPS failed to maintain adequate records of the time she worked on October 10. But that relaxed burden

applies only after the employee has established that she performed uncompensated overtime work. *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020). Berry's conclusory and inconsistent statements failed to establish she performed any uncompensated overtime work. Therefore, the relaxed burden, even if Berry could show that USPS failed to adequately maintain her time records, does not apply.

Additionally, USPS maintained a reasonable process for Berry to report any uncompensated time she might have worked on October 10. Berry simply had to complete the PS Form 1260. Berry's failure to complete the form removes any liability from USPS on her overtime claim. *See White*, 699 F.3d at 875–76. The district court therefore did not err in granting summary judgment to USPS on this claim.

B.

*FLSA Retaliation Claim*. The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). "To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006) (citation omitted). An employee can establish a retaliation claim with either direct or circumstantial evidence. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). But subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992). On its own, a change to an employee's position does not compel the conclusion

that unlawful retaliation motivated the change. *Adair*, 452 F.3d at 491. If an employee establishes a prima facie case of retaliation, the burden shifts to the employer to set forth a legitimate, nonretaliatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The district court correctly found that Berry did not present direct evidence of retaliation. To show retaliation under a direct-evidence theory, Berry must show "blatant remarks" by a supervisor revealing USPS's retaliatory intent and that retaliatory intent was a motivating factor in USPS's decision to remove Berry from the temporary-supervisor position. *See Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 235–36 (6th Cir. 2017) (citing *Sharp v. Aker Plant Servs. Grp., Inc.*, 726 F.3d 789, 798 (6th Cir. 2013)). Berry claims that LaRosa's statement that USPS would remove her from the temporary-supervisor position if she did not sign a PS Form 1260 constitutes direct evidence of retaliation. But LaRosa's statement is far from a blatant remark revealing any discriminatory intent, and Berry has failed to show that retaliatory intent motivated USPS's decision. Importantly, Berry acknowledged that LaRosa did not ask her to corroborate Harris's account of Berry's hours worked, only that she was asked to "write down something." Additionally, Berry admits that LaRosa told her that he was not punishing her for submitting a grievance. As such, Berry cannot demonstrate direct evidence of retaliation.

Relying on circumstantial evidence, Berry's FLSA retaliation claim does not fare any better. Assuming for the sake of argument that Berry has established a prima facie case, USPS posited a legitimate, nonretaliatory reason for its decision to remove Berry from the temporary supervisor position—Harris could no longer trust Berry to serve in a management position based on the falsification allegations Berry lodged against her. Harris testified that her inability to trust Berry in a supervisory role stemmed from Berry's persistence that Harris had falsified Berry's

compensatory time for October despite evidence to the contrary and despite her own union's determination.

Berry bears the burden of showing that USPS's "articulated reason is a pretext for retaliation." *Tingle v. Arbors at Hilliard*, 693 F.3d 523, 529 (6th Cir. 2012) (citation omitted). "To raise a genuine issue of fact as to pretext and defeat a summary judgment motion . . . , [Berry] must show that (1) the proffered reason had no factual basis, (2) the proffered reason did not actually motivate Defendants' action, or (3) the proffered reason was insufficient to motivate the action." *Adair*, 452 F.3d at 491 (citation omitted). "To demonstrate pretext, a plaintiff must show both that the employer's proffered reason was not the real reason for its action, and that the employer's real reason was unlawful [retaliation]." *EEOC v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (en banc).

Berry has failed to show that her accusation that Harris falsified her time records was not the real reason USPS demoted her from the temporary-supervisor position. Berry argues that USPS demoted her to conceal the alleged falsification of her time records. This argument lacks merit. Harris testified that if Berry had completed a PS Form 1260 or specified the amount of additional overtime that she worked, USPS would have compensated her for that time. And Harris admitted to modifying Berry's time record for October 10 to account for the clock-ring errors, thus demonstrating that Harris did not try to hide her actions. Ultimately, Berry presents no evidence to suggest that USPS's belief that Berry's actions created a loss of trust affecting her working relationship in her supervisory role were unfounded. She has thus failed to show that unlawful retaliation was the real reason for her demotion.

**III.**

For these reasons, we AFFIRM the district court's order granting USPS's motion for summary judgment.